UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

23-1515
_____

UNITED STATES,
Appellee,

v.

EDWIN OTERO,
Defendant-Appellant.

_____

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

BRIEF OF DEFENDANT-APPELLANT
EDWIN OTERO
_____

Darla J. Mondou
Counsel for Defendant-Appellant
2388 S. Orchard View Drive
Green Valley, AZ 85614
(520)241-7392
darlalaw@aol.com

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................i

TABLE OF AUTHORITIES.................................iii

JURISDICTIONAL STATEMENT..............................1
    A. Jurisdiction in the District Court............1
    B. Jurisdiction in the Court of Appeals.........2
    C. Timeliness of Appeal.........................2
    D. Disposition of all Claims ...................2

ISSUE PRESENTED FOR REVIEW............................

STATEMENT OF THE CASE.................................2
    A. Offense Facts ...............................2
    B. Change of Plea Hearing ......................7
    C. Sentencing Memoranda ........................9
    D. Sentencing Hearing..........................11

SUMMARY OF ARGUMENT..................................13

ARGUMENT.............................................15
    The Sentence is Unreasonable Where the Evidence
Does Not Support the Six-Level Increase for Sexual
Exploitation

    A. *Standard of Review*..........................15

    B. *Discussion*.................................15

    1. The *Sexual Exploitation Enhancement Requires
    "Sexual" Exploitation*..........................15

    2. *Procedural Error Equals Unreasonable
    Sentence*.......................................18

    3. *The Videos Fail to Show "Sexual"
    Exploitation*...................................19

    4. *Otero's Admission Was Boasting*..............22

    5. *Re-sentencing Without Procedural Error*......24

    6. *Substantive Unreasonableness*................26

**CONCLUSION**..........................................**28**

**CERTIFICATE OF COMPLIANCE**...........................**29**

**CERTIFICATE OF SERVICE**..............................**30**

# TABLE OF AUTHORITIES

**TABLE OF CASES**                                          **Page**

*Gall v. United States*, 552 U.S. 38 (2007)...........15

*United States v. Ahmed* 51 F.4th 12 (1st Cir. 2022)...18

*United States v. Breton,* 740 F.3d 1(1st Cir. 2014)...24

*United States v. Carrasquillo-Vilches*, 33 F.4th 36 (1st Cir. 2022)..........................................15

*United States v. Castillo-Torres*, 8 F.4th 68 (1st Cir. 2021)................................................20

*United States v. Clogston*, 662 F.3d 588 (1st Cir. 2011)..........................................15,27

*United States v. Coombs*, 857 F.3d 439 (1st Cir. 2017)................................................26

*Unites States v. Cruz-Dias*, 550 F.3d 169, 173 (1st Cir. 2008)................................................23

*United States v. De La Cruz,* 998 F.3d 808 (1st Cir. 2021)................................................2

*United States v. Díaz-Lugo*, 963 F.3d 145 (1st Cir. 2020)................................................15

*United States v. Espinoza-Roque*, 26 F.4th 32 (1st Cir. 2022)..................................21,22

*United States v. Gonzalez*, 981 F.3d 11(1st Cir. 2020)................................................28

*United States v. Graham*, 976 F.3d 59 (1st Cir. 2020)................................................26

*United States v. King*, 741 F.3d 305 (1st Cir. 2014) ................................................27

*United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008)................................................26

*United States v. Melendez-Hiraldo*, 82 F.4th 48(1st Cir. 2023)................................................26

*United States v. Millán-Isaac*, 749 F.3d 57 (1st Cir. 2014)................................................19

*United States v. Miranda-Díaz*, 942 F.3d 33 (1st Cir. 2019)................................................15

*United States v. Morgan*, 384 F.3d 1 (1st Cir. 2004)................................................19

*United States v. Oullette,* 985 F.3d 107 (1st Cir. 2021)
................................................25

*United States v. Portell-Marquez,* 59 F.4th 533 (1st Cir. 2023)................................................22

*United States v. Ramos-Carreras*, 5 F.4th 1 (1st Cir. 2023)................................................19

*United States v. Rivera*, 51 F.4th 47 (1st Cir. 2022)................................................25

*United States v. Rivera-Berrios*, 968 F.3d 130 (1st Cir. (2020)................................................19

*United states v. Rondon-Garcia* 886 F.3d 14 (1st Cir. 2018)................................................20

*United States v. Tavares*, 705 F.3d 4(1st Cir. 2013)................................................24

*United States v. Winczuk*, 67 F.4th 11 (1st Cir. 2023)................................................*passim*

*Williams v. United States*, 503 U.S. 193 (1992).......24

## STATUTES

18 U.S.C. § 2...........................................1
18 U.S.C. § 922(g)(1)..................................1
18 U.S.C. § 924(c)(1)(A)(iii).........................1
18 U.S.C. § 1201(c)....................................1
18 U.S.C. § 1512(a)(2)(C).............................1
18 U.S.C. § 1513(f)....................................1
18 U.S.C. §§'s 2241-2244..........................9,19
18 U.S.C. § 2251...............................9,16,19
18 U.S.C. § 2251(a)...................................16
18 U.S.C. § 2251(e)...................................16
18 U.S.C. §§'s 2421-2423..........................9,19
18 U.S.C. § 3553(a)...................................12
18 U.S.C. § 3742.......................................2
21 U.S.C. § 846........................................1
21 U.S.C. § 841(a)(1)..................................1
28 U.S.C. § 1291.......................................2
28 U.S.C. § 3231.......................................1

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2A4.1(b)(5)............................*passim*
U.S.S.G. § 2A4.1, Commentary, n.3.....................9
U.S.S.G. § 6A1.3...................................19,22
Chapter 5, Part A.................................12,25

## FEDERAL RULES CRIMINAL PROCEDURE

Rule 11................................................8

## FEDERAL RULES OF APPELLATE PROCEDURE

Rule 4(b)(1)(A)(i).....................................2
Rule 32(a)(5)(B)......................................29

## OTHER AUTHORITIES

Black's Law Dictionary (8th ed. 2004)...............17

# JURISDICTIONAL STATEMENT

## A.  *Jurisdiction in the District Court*

Appellant Edwin Otero (Otero) is the lead defendant in a Superceding Indictment that issued out of the United States District Court for the District of Massachusetts, Boston Division. (Joint Appendix "JA," pp. 22-41).[1] A motion to unseal the Superceding Indictment was granted. (JA p. 42).

The government alleged Otero violated: 21 U.S.C. §846 (Count 1); 21 U.S.C. §841(a)(1) (Counts 2 and 4); 18 U.S.C. §2 (Counts 4 and 11); 18 U.S.C. §924(c)(1)(A)(iii) (Count 5); 18 U.S.C. §922(g)(1) (Counts 7 and 8); 18 U.S.C. §1201(c) (Count 9); 18 U.S.C. §1513(f) (Count 10); and U.S.C. §1512(a)(2)(c) (Intimidation) (JA pp. 22-41). The district court had jurisdiction pursuant to 28 U.S.C. §3231.

## B.  *Jurisdiction in the Court of Appeals*

Otero appeals from the final judgement of the district court. This Court has jurisdiction pursuant to 18 U.S.C. §3742 and 28 U.S.C. §1291.

---

[1] The Joint Appendix consists of one Volume and is cited as JA; the Addendum is cited as Add.  The Sealed Supplemental Appendix is cited as Supp Appx.

C.  *Timeliness of Appeal*

Judgment entered on June 15, 2023. (Add pp. 1-9).

A timely notice of appeal was filed on June 16, 2023 in compliance with Fed. R. App. Pro. 4(b)(1)(A)(I). (JA p. 167).

D.  *Disposition of All Claims*

The judgement in this case finalized the proceedings below. There are no outstanding motions.


## ISSUE PRESENTED FOR REVIEW

Whether the sentence is unreasonable where the evidence is insufficient to support a six-level enhancement for sexual exploitation under U.S.S.G. 2A4.1(b)(5)?


## STATEMENT OF THE CASE[2]

A.  *Offense Facts*

Otero along and his co-conspirators operated a

---

[2] **The facts are limned from the Presentence Investigative Report (PSI)cited as Supplemental Appendix ("Supp Appx") followed by page and paragraph number), transcripts commemorating the plea and sentencing hearings and the parties filings below. See *United States v. De la Cruz,* 998 F.3d 508 (1st Cir. 2021).**

successful drug distribution ring on Cape Cod and in Rhode Island. The Presentence Investigative Report (PSI) set forth the organizational tree of the drug distribution enterprise and placed Otero on the top most branch with all others below him subject to his orders. At least ten individuals played a role in the enterprise, including Otero's mother. (Supp Appx pp. 1-10, ¶¶'s 1-27).

Federal and local law enforcement began to watch Otero, his immediate family, and his minions in late 2018. The investigation was triggered by the arrest of Krymeii Fray who was in possession of 98.81 grams of heroin/fentanyl. (Supp Appx p. 13, ¶ 40). An aggressive investigation was initiated in the early spring of 2019 and culminated with the arrest of Otero and his mother on May 20, 2019.

The government received authorization to place a "wire tap" to intercept communications on two of Otero's cellular telephones. Through this mode of electronic tracking law enforcement learned drugs were being distributed out of Otero's stash houses: a condo in Hyannis, Massachusetts, and an apartment in Pawtucket, Rhode Island. In mid-April, 2019 Otero

believed an individual known to him had provided information to law enforcement about his drug business. Otero lured this individual (the victim of the kidnaping) to his apartment in Pawtucket, Rhode Island on the pretext of a night of entertainment. After patronizing a strip club, Otero and the victim returned to Otero's apartment accompanied by several of Otero's minions, including co-conspirators Anthony Basilic and Justin Joseph. Otero, Joseph, and several other men present attacked the victim with fists and a sledge hammer and prevented the victim from escaping. Otero ordered the participants to strip the victim of his clothing and take his cell phone. Basilic made a video of the assault on one of Otero's two cell phones. Otero can be heard yelling in the background "strip that nigga butt naked" and threatening to rape the victim. (JA pp. 67-68. 107-108; Supp Appx pp. 9-10, ¶¶'s 20-26).

The government's trial brief sets out a confidential witness's description of the assault as seen in the video:

> First, the video started out with him and [Victim 1] fighting in the kitchen. And then he kind of fast forwarded it a little bit, and then it

> was [Victim 1] — the picture that he had showed
> me, it looked like that he was sitting on the wall
> and there was blood behind him. They were
> kicking him. And then he had fast forwarded it
> again, and at one point he had told him to strip
> and take all his clothes off, completely naked.
> And he had like, what looked like a sledgehammer,
> like a small sledgehammer with a small handle, and
> he said that he put the handle in his ass. That's
> what he had said on the video. And you could see
> that he was trying to put it in his backside

(JA pp. 68-69, 91; ¶ 26). The district court's

reference to "Ms. Cotell's testimony" at sentencing

supports finding Ms. Cotell is the testifying

confidential witness, delineated as CW-3. (Supp Appx p.

10, ¶ 26). The government had evidence Otero had

characteristically boasted he sodomized/raped the

victim. (JA p. 108, 121). The victim did not seek

medical attention when finally released and testified

he had no recall of the assault or of being sodomized.

(JA pp. 67-68, 89, 121; Supp Appx p. 9-1, ¶ 22-26).

In early May, 2019 a dispute of over profits

gained from drug sales arose between Otero and Krymeii

Fray. Otero claimed Fray owed him money for 150 grams

of heroin; Fray denied the claim. (JA pp. 65, 123; Supp

Appx pp. 14-15, ¶¶'s 44-47). Otero, determined to take

action to recoup the profits he deemed Frayed owed him,

enlisted Basilici and Joseph, along with and another

male, to accompany him to Fray's residence to get his
money. Otero and the two men arrived at Fray's
residence and immediately an exuberant moil ensued.
Joseph had a firearm; Otero yelled to Joseph to "kill
him (Fray), kill him." Joseph dutifully fired one shot
toward Fray; Fray was able to escape without harm. (JA
p. 123-125; Supp Appx pp. 15-16, ¶¶'s 51-53).

At the time the events were unfolding at Fray's
residence, several federal agents were setting up a
surveillance of Otero in a nearby location when the
agents heard a loud pop and watched Otero and the other
two males leave Fray's residence in a Honda at a high
rate of speed. The Honda was later found abandoned in
nearby woods. (JA pp. 123-124). A 9mm magazine similar,
to one used in the Hi-Point rifle possessed by Joseph,
was found at Fray's residence. (Supp Appx p. 16, ¶¶'s
53-54). The next day Otero was observed near Fray's
residence and it appeared he was searching for the
firearms tossed out a window of the Honda as it sped
away from Fray's house. (JA pp. 70-71; Supp Appx pp.
17-18, ¶¶'s 62-63). Otero later bragged to friends he
shot up the whole place..."I went crazy last night."

(Supp Appx p. 17, ¶ 60).[3]  However, only Joseph had a firearm.

A search of Otero's two residences yielded drug trafficking supplies, including baggies, scales, and numerous "burner" cell phones. (Supp Appx p. 8, ¶ 18). On May 20, 2019 investigators searched Otero's grandmother's apartment based on learning drug activities originated at that location. Two firearms and ammunition were found at Otero's grandmother's house. (JA p. 55). A 9mm H-Point rifle was found outside her house. The casing found at Fray's residence did not fit that particular firearm. (JA pp. 55, 67, 87, 124; Supp Appx p. 8, ¶ 19).

B.   *Change of Plea Hearing*

Otero exercised his right to a trial. However, a month after the government filed its trial brief, he changed course and tendered a plea of guilty to Counts 1, 2, 4, 5, 8-11. (Add pp. 1-9; JA pp. 43-76, 77-100). The government's motion to dismiss Count 7 was granted. (JA p. 155). Otero eschewed entering into a contractual

---

[3] This is indicative of Otero's penchant for salacious lies: only Joseph fired a weapon. Otero did not fire a a weapon. (JA pp. 124-125; Supp Appx pp. 14, 16; ¶¶'s 45, 55). Joseph apologized to Fray.

plea agreement with the government. The district court orally advised Otero that by pleading guilty he was waving the rights contained in Fed. R. Crim. Pro 11 and further ensured that his plea was voluntary and he was satisfied with his counsel's advice. (JA pp. 50-51). Otero acknowledged he was pleading guilty to felony charges and the maximum penalties for the charges. He acknowledged that supervised release conditions would be imposed which, if violated, could result in incarceration. (JA pp. 51-56).

The district court advised Otero the sentencing guidelines are advisory, but his sentence could not reside below fifteen years. Additionally, Otero or the government could appeal the sentence. The applicable guideline range is fifteen years to life. (JA pp. 53-60). The government delineated the elements and facts in support of each element of the offenses it must establish beyond a reasonable doubt and the maximum sentence was life in prison. (JA p. 54). Count 5 is supported by the shot fired by Joseph at Fray during the moil and proved the elements of Count 1, using a firearm in furtherance of a drug trafficking offense. Count 8 is based on the firearm seized outside of

Otero's grandmother's apartment. Otero admitted he had previously been convicted of a qualifying felony. (JA pp. 55, 67, 87, 124).

Otero objected to the PSI advocating U.S.S.G. § 2A4.1(b)(5) was warranted under the facts. (Supp. Appx p. 45, ¶ 126). Otero otherwise agreed with the government's version of the facts; his plea was accepted by the district court. (JA pp. 71-74). A PSI was ordered prepared for sentencing. (JA pp. 73-74; Supp Appx pp. 1-69).

C. *Sentencing Memoranda*

The parties filed sentencing memoranda.(JA pp. 101-115; 116-139). The government's memorandum in Otero's case also included Basilici and Joseph in one document. Under U.S.S.G. § 24A.1(b)(5), a six-level enhancement is added to the base level offense when the victim is sexually exploited. The term "sexually exploited" includes offenses set forth in §§ 2241-2244, 2251 and 2421-2423. *See* U.S.S.G. § 2A4.1, Commentary, n.3. (Add pp. 10-13). Otero argued that the video does not rise to the level of a preponderance of the evidence when a naked victim is touched with an object on the buttocks and thus is not "sexual." Without a

sexual component, the evidence is insufficient to find "sexual undertones" and the offense level should reside at offense level 37. Otero admitted he exaggerates his role in events, evidenced by his falsely claiming he shot up Fray's house. He requested the district court also take into consideration his medical issues and his need to care for his family. (JA pp. 101-115).

To support his request for a sentence of 180 months, Otero provided nationwide statistics of kidnaping sentence over a span of five years. The statistical evidence, compiled by the United States Sentencing Commission, is utilized to promote consistency and avoid disparate sentences imposed for kidnaping. (JA pp. 111-113).

The government countered Otero admitted to others he raped the kidnaped victim and that two witnesses who testified at Basilic's trial stated they saw a video of what "appeared to be a rape." (Supp Appx ¶ 26). The government further noted Otero's boasting he "raped the victim" was a loud and clear warning to his underlings in the drug trafficking: they could expect the same. (JA pp. 121-122, 149). The government illuminated that the facts and trial testimony proved Otero was the

undisputed leader and instigator of violence and a decades long sentence should be imposed to protect the public. (JA pp. 121, 133, 138, 149; Supp Appx p. 10, ¶ 26 ).

D. *Sentencing Hearing*

The district court confirmed it had read the PSI and inquired of probation if anything had been withheld from the report; probation affirmed the PSI was complete. (JA pp. 142-143). The PSI calculated Otero's offense level at 43, CHC III.(PSI ¶¶'s 133, 196). Subtracting six levels for U.S.S.G. § 2A4.1(b)(5) the offense level resides at 37.

Otero informed the district court he had reviewed the PSI with counsel and he once again argued the enhancement for sexual exploitation did not apply. (JA pp. 143-144). Otero vigorously argued the video failed to show a sexual insertion and without that enhancement his sentence should be 180 months and no longer. (JA p. 143-146). The government advocated that publishing the video of the assault, coupled with his bragging he raped, the victim demonstrates a lack of remorse and evinces a high risk to the community. (JA pp. 121, 149-152; Supp Appx p. 10, § 26). To this end, Otero

acknowledged his behavior was reprehensible. He renewed his request the district court take into consideration his medical issues and sentence him to 180 months in toto. (JA pp. 154-159).

The district ruled (1) the evidence at (Basilici's) trial; (2) the testimony from Ms. Cotell; and, (3) the sexual overtones of the assault all support finding the enhancement is supported by a preponderance of the evidence. (JA pp. 144-145). Rejecting Otero's request for a sentence of 180 months, the district court noted the callous disregard Otero has for others, evidenced by the beating, the shooting and the drug dealing. The district court then duly considered sentencing factors applicable to Otero under 18 U.S.C. § 3553(a), including the need to avoid sentencing disparities. (JA pp. 160-161).

The PSI lodged Otero's Criminal History Category at III (CHC), offense level 43, which advises a life sentence. (PSI ¶ 196). *See* Chapter 5, Part A of the United States Sentencing Guidelines. The district court imposed a below guideline sentence of 456 months: 336 months inclusive of all but Count 5. Count 5 incurred a sentence of 120 months, to run consecutive to the 336

months. 4 years of supervised release was imposed on Counts 1, 2, and 4; 3 years was imposed on all other counts. (JA p. 161).

The district court informed Otero the sentence is *presumptively reasonable* as it resides below the guideline range for "life" and lies "smack dab" in the middle of the range Otero suggested. (JA pp. 163-164). Additionally, the district court emphatically stated "there is no circumstances under which I would sentence him to less than that, even if he appeals and the court finds that I am wrong on the sexual exploitation." (JA pp. 163-164).

### SUMMARY OF ARGUMENT

A video of a naked adult being touched on the buttocks while being physically assaulted by several men is insufficient to impose U.S.S.G. § 2A4.1(b)(5). Neither the video nor testimony given at Basilici's trial exhibit "sexual overtones" as found by the district court. Otero's boasting he raped the victim is not supported by Ms. Cotell's testimony of what "appeared to her." The victim's testimony added nothing to the evidence. The evidence fails to establish "sexual exploitation" to support the enhancement.

The language of the guideline clearly refers to statutory law prohibiting and penalizing conduct involving a minor, not an adult. There is scant, if any, precedent for imposing the enhancement under these discrete facts. The government's evidence fails to scale even the low summit of a "preponderance of evidence" as required by U.S.S.G. § 2A4.1(b)(5). (Add 10-13).

While Otero's assault on the victim is demeaning, cruel, and humiliating, the touching of the victim's buttocks with an object carries no evidence of a sexual overtone. Other than Otero's ludicrous bragging otherwise, there is no evidence of insertion. The district court's procedural error is not harmless.

This Court should vacate the sentence and remand for re-sentencing before a judge who may not embrace the very same sentence if this Court rules the six offense levels for the unproven enhancement is an abuse of discretion. The district court made clear the sentence is a "guideline" sentence, subject to abuse of discretion.

///

## ARGUMENT

### The Sentence is Unreasonable Where the Evidence Does Not Support the Six-Level Increase for Sexual Exploitation

**A.** *Standard of Review*

This Court's review of a criminal defendant's claims of sentencing error involves a two-step pavane. *See United States v. Miranda-Díaz*, 942 F.3d 33, 39 (1st Cir. 2019). The Court first determines whether the sentence imposed is procedurally reasonable, then moves on to determine whether it is substantively reasonable. *See United States v. Clogston*, 662 F.3d 588, 590 (1st Cir. 2011).

Courts tackle first a claim of procedural error. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A review of preserved error is for abuse of discretion. *United States v. Díaz-Lugo*, 963 F.3d 145, 151 (1st Cir. 2020). Within the abuse of discretion rubric this Court reviews findings of fact for clear error; questions of law are reviewed "*de novo." See United States v. Carrasquillo-Vilches*, 33 F.4th 36, 41 (1st Cir. 2022).

**B.** *Discussion*

    1. *The Sexual Exploitation Enhancement Requires "Sexual" Exploitation*

The district court misinterpreted sentencing guideline U.S.S.G. §24A.1(b)(5). The most recent case interpreting the word "exploitation" involves "sexual exploitation of a minor" is *United States v. Winczuk*, 67 F.4th 11 (1st Cir. 2023). That decision issued sixteen days prior to sentencing in this case and is highly relevant, if not dispositive, on the inappropriateness of the enhancement. The defendant in *Winczuk* pleaded guilty to violating 18 U.S.C. § 2251(e), requiring conduct that was both sexual in nature and exploited a minor. It cannot be denied the interpretation of "exploitation" in *Winczuk* reveals that U.S.S.G. §2A4.1(b)(5)is inapplicable in the instant matter. That interpretation relies on 18 U.S.C. § 2251 for a definition. The statute, in subsection (a), states in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e).

The *Winczuk* case sets forth the most recent definition of "exploitation": "[t]he use of a person,

esp. a child, in prostitution, pornography, or other
sexually manipulative activity that has caused or could
cause serious emotional injury." Sexual Exploitation,
Black's Law Dictionary (8th ed. 2004). *Id.* at 16-17.
Likewise, the general definition of "sexual abuse" is
"[a]n illegal sex act, esp[ecially] one performed
against a minor by an adult." Otero was not charged
with sexual abuse of a minor. And, there appears to be
no precedent emanating from this Court, or a sister
court, where the definition of sexual exploitation
extends to touching the buttocks of an "adult by an
adult" during a non-sexually motivated assault.

It is plausible Otero published videos of the
[naked] assault to instill fear in his minions as to
what he or she could expect if one outed him to law
enforcement. Indeed, this is what the government
argued: Otero used the video of the beating as a
warning to others to not dare consider being a "rat."
That does not fit within this Court's interpretation of
*exploitatio*n as defined in *Winczuk*. To warn of physical
force is distinct from employing sexual exploitation.

As for "sexual overtones," the video shows nothing
closely related to "sex" by Otero's touching the

victim's buttocks. Thus, the enhancement is an abuse of discretion and the district court clearly erred applying these facts to the guidelines.

Moreover, as to the "serious emotional injury" component, the victim testified he had no recall of the beating or the alleged rape. Clearly the definition of sexual exploitation in *Winczuk* illuminates the insufficiency of the facts in this case. To find the facts fall within the requirements of U.S.S.G. §24A.1(b)(5) is an abuse of discretion. However, if this Court finds exploitation of the victim by Otero's publishing the video, the enhancement still fails: that falls far short of being deemed "sexual" exploitation.

2. *Procedural Error Equals Unreasonable Sentence*

When mulling the procedural reasonableness of a sentence, "we afford de novo review to the sentencing court's interpretation and application of the [Guidelines], assay the court's fact finding for clear error, and evaluate its judgment calls for abuse of discretion." *United States v. Ahmed* 51 F.4th 12, 22 (1st Cir. 2022). Otero's arguments at sentencing are sufficiently factually-specific to have put the district court on notice the enhancement was not

warranted. *See United States v. Rivera-Berrios*, 968 F.3d 130, 134 (1st Cir. 2020). "Factual findings made at sentencing must be supported by a preponderance of the evidence." *See United States v. Morgan*, 384 F.3d 1, 5 (1st Cir. 2004). "[A] district court has broad discretion at sentencing to consider information pertaining to the defendant and the defendant's offense conduct." *United States v. Ramos-Carreras*, 5 F.4th 1, 5-6 (1st Cir. 2023), quoting *United States v. Millán-Isaac*, 749 F.3d 57, 69 (1st Cir. 2014).

U.S.S.G. § 2A4.1(b)(5) applies when a (kidnaped) victim is raped. Application Note 3 informs that "sexually exploitation" includes offenses set forth in 18 U.S.C. §§ 2241-2244, 2251, and 2421-2423. Otero was not charged with violating any one of the listed statutes, which were made law to protect minors. While the adult victim in this case was vulnerable as he suffered a beating, that is insufficient evidence to impose the enhancement for that vulnerability.

3. *The Videos Fail to Show "Sexual" Exploitation*

Sentence enhancements require the government prove application in this case by a preponderance of reliable evidence. To be sure, "Findings based solely on

unreliable evidence cannot be established by a preponderance of the evidence and are therefore clearly erroneous." *United States v. Castillo-Torres*, 8 F.4th 68, 71 (1ˢᵗ Cir. 2021). Determinations of reliability are reviewed for an abuse of discretion. *Id.* In *Castillo* a criminal complaint lacked sufficient reliable evidence to rise to a preponderance of the evidence. The criminal complaint became the district court's focus while the PSI author took no position as to sufficiency. *Id.* at 70. That is applicable here.

This Court has held "A sentencing judge may not rely on mere charges to infer unlawful behavior unless there is proof by a preponderance of the evidence of the conduct that caused the charges. *Id.* at 71, quoting *United states v. Rondon-Garcia* 886 F.3d 14, 25-26 (1st Cir. 2018). The panel remanded for re-sentencing finding the district court's own statements made clear that it placed substantial weight on the allegations underlying the dismissed misdemeanor assault and threat charges against Castillo. *Id.* at 73.

The same result should obtain in the instant case: the district court focused on unreliable evidence that the victim was raped. The victim here did not allege

Otero raped him. There is no other credible evidence, not on the video or from first-hand observation, that Otero *inserted the sledge hammer handle into the victim's buttocks.*

Ms. Cotell's observation that Otero "appeared to insert the handle of the sledge hammer" fails to prove he did so. The district court ruled Otero's admission <u>trumped the lack of evidence</u>, despite the overwhelming evidence Otero is a prolific boaster known to spout false claims in every situation. It cannot be said with assurance what appeared to Ms. Cotell to be rape was, in fact rape, or that being touched on one's bare buttocks with an object, while being brutally attacked, imbues the touching with sexual overtones. Clearly the evidence is insufficient for the district court to deem the government met its burden of proof by any measure.

In *United States v. Espinoza-Roque*, 26 F.4th 32, 36-37 (1st Cir. 2022) the district court erred in relying on a defendant's contradictory statements regarding his use of marijuana. The defendant confirmed he used marijuana daily to get to sleep but could abstain for weeks. *Id.* Nonetheless, the district court relied on the defendant's "daily" admission and

sentenced him for being an unlawful daily user at the time of the offense. This Court ruled "Whatever might be said about the permissibility of that choice in a vacuum, we conclude that here, it was clearly erroneous given other, undisputed evidence in the record." *Id.* The same result should obtain in the instant matter. The enhancement should be vacated and remanded for re-sentencing without the enhancement. In other words, a revised sentence premised on the new offense level.

### 4. *Otero's Admission Was Boasting*

"[T]he court can consider all kinds of relevant information regardless of admissibility at trial (including hearsay that has never been tested by cross-examination), provided it has 'sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3) *United States v. Portell-Marquez*, 59 F.4th 533, 537 (1st Cir. 2023). In this matter, the district court bestowed unwarranted veracity on Otero's admission (to his girlfriend) that he raped the victim.

Two facts are clear: Otero ordered the adult victim be stripped naked and Otero touched the adult victim on his buttocks. The victim's nakedness and the video

showing a touching of buttocks do not supply sexual overtones to the assault. Those two facts fall short of proving sexual overtones.

In *Unites States v. Cruz-Dias*, 550 F.3d 169, 173 (1st Cir. 2008) one bank employee testified he could not tell if the gun the defendant had in his hand was real or a toy during the robbery. *Id.* However, three other bank employees testified as to a certainty the gun was real. *Id.* The court found the circumstantial evidence along with the direct evidence supported finding the gun was real. *Id.* Not so in this matter.

Ms. Cotell did not conclusively opine she saw an actual rape; the victim did not recall being raped. This void reveals Otero's claim of rape is likely as untrue as his claim that *he* shot up Fray's house. If one claim was proven to be false bragging, it is likely the other claim is untrue.

The word brag, bragged, or bragging appears in the government's filings at least 9 times. The instant case is replete with Otero's bragging. This case presents outside of the norm where the evidence proves a rape occurred. In sum, the district court clearly abused its discretion in finding facts to support the enhancement

and then applied those unreliable facts to the
sentencing guidelines. The sentence should be vacated
and remanded for re-sentencing.

   5. *Re-sentencing Without Procedural Error*

   The district court ruled "there is no circumstance
under which I would sentence him to less than that,
even if he appeals and the court finds that I am wrong
on the sexual exploitation." The district court's
pronouncement that the same sentence would prevail on
remand, even if the enhancement did not apply,
illuminates that the procedural error is not harmless.
In *United States v. Tavares*, 705 F.3d 4, 25-27 (1st
Cir. 2013) this Court held "An error is harmless if it
`did not affect the district court's selection of the
sentence imposed.'" (quoting *Williams v. United States*,
503 U.S. 193, 203 (1992). Otero argued the enhancement
did not apply on the facts. The district court selected
the sentence by embracing insufficient evidence.

   A district court has discretion to calculate a
guidelines range and thus sentencing becomes a judgment
call. *See generally United States v. Breton,* 740 F.3d
1, 19 (1st Cir. 2014). True, this Court has
consistently upheld a district court's pronouncement

the "same sentence would prevail" on remand. "[W]e have consistently held that when a sentencing court makes clear that it would have entered the same sentence regardless of the Guidelines, any error in the court's Guidelines calculation is harmless." *United States v. Rivera*, 51 F.4th 47, 53 (1st Cir. 2022), quoting *United States v. Ouellette*, 985 F.3d 107, 110 (1ˢᵗ Cir. 2021). In *Rivera* the defendant could not surmount plain error review and the government met its burden of proof under a preponderance of the evidence. *Id.* at 52.

The paucity of evidence in the instant matter, even including Otero's false boasting, falls short of a preponderance of the evidence. Given the district court's language regarding the "same sentence," it is clear the sentence is sentencing guideline-based. In *United States v. Ouellette*, 985 F.3rd at 110, the district court made clear the sentence was a "non-guideline" sentence rendering any guideline error harmless. The guideline-based sentence is not harmless; the correct offense level is 37 with a sentencing range of 262 to 327 months. *See* Chapter 5, Part A. In this case it cannot be said the guideline error did not affect the length of the sentence imposed: the

brutal assault went to the heart of the sentence. *See United States v. Graham*, 976 F.3d 59, 62 (1st Cir. 2020). Where the current sentence is not untethered from the sentencing guidelines, the judgment to impose the enhancement is an abuse of discretion and not harmless error.

The sentence should be vacated and remanded for re-sentencing.

### 6. *Substantive Reasonableness*

Otero preserved a challenge to the substantive reasonableness of his sentence for appeal. *See United States v. Melendez-Hiraldo*, 82 F.4th 48, 56 (1st Cir. 2023 ). Otero argued for a 180-month sentence. In the sentencing context, "reasonableness is a protean concept." *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008). Given that the circumstances of a particular case will almost always justify more than one reasonable sentence, a sentence will be vacated as substantively unreasonable only if it "falls outside the expansive boundaries" of the universe of reasonable sentences. *Id.* It follows then a defendant who seeks to challenge the substantive reasonableness of his sentence faces an "uphill climb." *See United States v.*

*Coombs*, 857 F.3d 439, 452 (1st Cir. 2017).

A defendant "must adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be reasonable." *United States v. Clogston,* 662 F.3d at 592-93*.*

Here the sentence is unbalanced when the sexual exploitation enhancement does not apply. While the 336 months on Counts 1 and 9 run concurrent to each other, (and each falls squarely within the statutory maximum for the offense) 336 months without the 6 level enhancement is not defensible.

"The linchpin of this Court's review for substantive reasonableness is a determination about whether the sentence reflects 'a plausible ... rationale and a defensible result.'" *United States v. King*, 741 F.3d 305, 308 (1st Cir. 2014).

To shore up his argument, Otero provided statistical evidence of sentences imposed nationwide (for kidnaping offenses) and argued specifically this circuit's average sentence for the same offense in 2018 was 189 months. Otero concedes he did not argue the

statistical evidence was "apples to apples" with the facts in his case as required in *United States v. Gonzalez*, 981 F.3d 11, 23 (1st Cir. 2020). Nonetheless, the sentence is almost double that of the statistical sentence of 189 months for kidnaping. The sentence is "greater than necessary." The sentence should be vacated and remanded for re-sentencing absent the sexual exploitation enhancement.

CONCLUSION

The Government failed to prove the enhancement applies to Otero's assaultive conduct. The district court's error in finding proof where it does not exist is not harmless, rendering the sentence procedurally and substantively unreasonable. Vacating the enhancement and remanding to the district court for a new sentencing hearing, minus the enhancement, to be convened before a different judge is warranted.

RESPECTFULLY SUBMITTED,

/s Darla J. Mondou
Mondou Law Office
2388 S. Orchard View Dr.
Green Valley, AZ 85614
520-241-7392
Counsel for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

Undersigned counsel for Appellant hereby certifies the Opening Brief is in compliance with Fed. R. App. Pro 32(a)(5))B)(as amended) which permits briefs submitted in monospaced typeface. The brief is double spaced, Word Perfect Courier New, 12 point font, and contains 5469 words, 463 sentences, and 726 lines. Dated this 25th day of July, 2024.

## CERTIFICATE OF SERVICE

I, Darla J. Mondou, counsel for Appellant, certify that on July 25, 2024 I electronically filed the foregoing Opening Brief and Addendum with the Clerk of the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. The United States Attorney's Office will be served by the appellate CM/ECF system. I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing by First-Class mail, postage prepaid within 3 calendar days of filing to the following non-CM/ECF party:

Edwin Otero # 01581-138
USP Coleman II, U.S. Penitentiary
P.O. Box 1034
Coleman, FL 33521

/s Darla J. Mondou

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

JUDGMENT AND CONVICTION.......................................1-9

U.S.S.G.§ 241.1..............................................10-13

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**v.**<br>EDWIN OTERO | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: **1: 19 CR 10245 - 001 - ADB**<br>USM Number: 01581-138<br>Jeffrey Miller, Esq.<br><span style="font-size:smaller">Defendant's Attorney</span> |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1s, 2s, 4s, 5s, 8s, 9s, 10s, 11s

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC § 846 | Conspiracy to Distribute and to Possess w/Intent to Distribute 100 grams or more of Heroin | 05/20/19 | 1s |
| 21 USC § 841(a)(1) | Distribution of Heroin | 04/29/19 | 2s |
| 21 USC § 841(a)(1) | Possession with Intent to Distribute Heroin | 05/04/19 | 4s |
| 18 USC § 924(c)(1) | Possession of a Firearm in furtherance of a drug trafficking crime | 05/08/19 | 5s |

   The defendant is sentenced as provided in pages 2 through ___9___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/18/2023
_____
Date of Imposition of Judgment

/s/ Allison D. Burroughs
_____
Signature of Judge

The Honorable Allison D. Burroughs
Judge, U.S. District Court
_____
Name and Title of Judge

6/15/2023
_____
Date

**Add-1**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 1A

Judgment—Page ___2___ of ___8___

DEFENDANT: EDWIN OTERO
CASE NUMBER:  **1: 19  CR  10245  - 001  - ADB**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 922(g)(1) | Felon in Possession of a Firearm | 05/20/19 | 8s |
| 18 USC § 1201(c) | Conspiracy to Commit Kidnapping | 04/10/19 | 9s |
| 18 USC § 1513(f) | Conspiracy to Obstruct Justice by Retaliating against a Witness, Victim, or Informant | 04/10/19 | 10s |
| 18USC§1512(a)(2) | Obstructing Justice by Tampering with a Witness, Victim, or Informant by Physical Force or Threat | 04/25/19 | 11s |

**Add-2**

AO 245B (Rev.02/18)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  3  of  9

DEFENDANT: EDWIN OTERO
CASE NUMBER:  **1: 19  CR  10245   - 001 - ADB**

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total
term of:  456  month(s)

This term consists of a term of 336 months on Counts 1s and 9s, terms of 240 months on Counts 2s, 4s, 10s, and 11s, and a
term of 120 months on Count 8s, all to be served concurrently, and a term of 120 months on Count 5s, to be served
consecutively to the terms imposed on Counts 1s, 2s, 4s, and 8s-11s.

☑  The court makes the following recommendations to the Bureau of Prisons:

see page 4 for judicial recommendations

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at  _____  ☐ a.m.  ☐ p.m.   on  _____  .

☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on  _____  .

☐  as notified by the United States Marshal.

☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

a  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

**Add-3**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 2A — Imprisonment

Judgment—Page ___4___ of ___9___

DEFENDANT:  EDWIN OTERO
CASE NUMBER:  **1: 19  CR  10245  – 001 - ADB**

# ADDITIONAL IMPRISONMENT TERMS

The Court makes a judicial recommendation that the defendant participate in substance abuse treatment while in Bureau of Prisons' custody.

The Court makes a judicial recommendation that the defendant be designated to an institution commensurate with security where the Bureau of Prisons can afford appropriate medical care for the defendant's documented medical needs.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
      Sheet 3 — Supervised Release

Judgment—Page   5   of   9

DEFENDANT:   EDWIN OTERO
CASE NUMBER:   **1: 19  CR  10245   - 001 - ADB**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :     4   year(s)

This term consists of a term of 4 years on Counts 1s, 2s, 4s, 5s, and 9s, and terms of 3 years on Counts 8s, 10s, and 11s, all such terms to run concurrently.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

   ☐ The above drug testing condition is suspended, based on the court's determination that you
     pose a low risk of future substance abuse. *(check if applicable)*

4. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

6. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**Add-5**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 6 | of | 9 |

DEFENDANT:  EDWIN OTERO
CASE NUMBER:     1: 19 CR 10245   - 001 - ADB

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page ___7___ of ___9___

DEFENDANT: EDWIN OTERO
CASE NUMBER: **1: 19 CR 10245  - 001 - ADB**

## ADDITIONAL SUPERVISED RELEASE TERMS

1. You must not knowingly have any contact, direct or indirect, with the victim.

2. You must submit to substance use testing, not to exceed 104 drug tests per year, to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  8  of  9

DEFENDANT:  EDWIN OTERO
CASE NUMBER:  1: 19 CR 10245  - 001 - ADB

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 800.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $          0.00 | $          0.00 | |

☐ Restitution amount ordered pursuant to plea agreement   $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Add-8**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___9___ of ___9___

DEFENDANT:  EDWIN OTERO
CASE NUMBER:   1: 19 CR 10245  - 001 - ADB

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $   800.00   due immediately, balance due

☐   not later than _____ , or
☐   in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

**Add-9**

**USSG §241.1 KIDNAPPING, ABDUCTION, UNLAWFUL RESTRAINT**

(a) Base Offense Level: 32

(b) Specific Offense Characteristics

(1) If a ransom demand or a demand upon government was made, increase by 6 levels.

(2) (A) If the victim sustained permanent or life-threatening bodily injury, increase by 4 levels; (B) if the victim sustained serious bodily injury, increase by 2 levels; or (C) if the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels.

(3) If a dangerous weapon was used, increase by 2 levels.

(4) (A) If the victim was not released before thirty days had elapsed, increase by 2 levels.

(B) If the victim was not released before seven days had elapsed, increase by 1 level.

(5) If the victim was sexually exploited, increase by 6 levels.

(6) If the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim, increase by 3 levels.

(7) If the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense or escape therefrom; or if another offense was

committed during the kidnapping, abduction, or unlawful restraint, increase to—

> (A) the offense level from the Chapter Two offense guideline applicable to that other offense if such offense guideline includes an adjustment for kidnapping, abduction, or unlawful restraint, or otherwise takes such conduct into account; or

> (B) 4 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level 43, in any other case,  if the resulting offense level is greater than that determined above.

(c) Cross Reference

> (1) If the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder).

Commentary

> Statutory Provisions: 18 U.S.C. §§ 115(b)(2), 351(b), (d), 1201, 1203, 1751(b), 2340A. For additional statutory provision(s), see Appendix A (Statutory Index).

Application Notes:

> 1. For purposes of this guideline—

Definitions of "serious bodily injury" and "permanent or life-threatening bodily injury" are found in the Commentary to

§1B1.1 (Application Instructions). However, for purposes of this guideline, "serious bodily injury" means conduct other than criminal sexual abuse, which is taken into account in the specific offense characteristic under subsection (b)(5).

2. "A dangerous weapon was used" means that a firearm was discharged, or a "firearm" or "dangerous weapon" was "otherwise used" (as defined in the Commentary to §1B1.1 (Application Instructions)).

3. "Sexually exploited" includes offenses set forth in 18 U.S.C. §§ 2241–2244, 2251, and 2421–2423.

4. In the case of a conspiracy, attempt, or solicitation to kidnap, §2X1.1 (Attempt, Solicitation, or Conspiracy) requires that the court apply any adjustment that can be determined with reasonable certainty. Therefore, for example, if an offense involved conspiracy to kidnap for the purpose of committing murder, subsection (b)(7) would reference first degree murder (resulting in an offense level of 43, subject to a possible 3-level reduction under §2X1.1(b)). Similarly, for example, if an offense involved a kidnapping during which a participant attempted to murder the victim under circumstances that would have constituted first degree murder had death ocurred, the offense referenced under subsection (b)(7) would be the offense of first degree murder.

Background: Federal kidnapping cases generally encompass three

categories of conduct: limited duration kidnapping where the
victim is released unharmed; kidnapping that occurs as part of or
to facilitate the commission of another offense (often, sexual
assault); and kidnapping for ransom or political demand.
The guideline contains an adjustment for the length of time that
the victim was detained. The adjustment recognizes the increased
suffering involved in lengthy kidnappings and provides an
incentive to release the victim. An enhancement is provided when
the offense is committed for ransom (subsection (b)(1)) or
involves another federal, state, or local offense that results in
a greater offense level (subsections (b)(7) and (c)(1)).
Section 401 of Public Law 101-647 amended 18 U.S.C. § 1201 to
require that courts take into account certain specific offense
characteristics in cases involving a victim under eighteen years
of age and directed the Commission to include those specific
offense characteristics within the guidelines. Where the
guidelines did not already take into account the conduct
identified by the Act, additional specific offense
characteristics have been provided. Subsections (a) and (b)(5),
and the deletion of subsection (b)(4)(C), effective May 30, 2003,
implement the directive to the Commission in section 104 of
Public Law 108-21.